**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

DEREK "COLDDRANK" MARSHALL

                                                           CIVIL ACTION

VERSUS

                                                    NO. 25-805-JWD-EWD

MUSIC ACCESS, INC.,
ROBERT GONZALEZ,
STEVE CAVAZOS, AND DOES 1–10

## RULING AND ORDER

Before the Court is a *Motion to Dismiss Pursuant to 12(b)(2) and 12(b)(3), or Alternative, Motion to Transfer to the Northern District of Texas due to Improper Venue* ("the *Motion*") (Doc. 25), filed by Defendants Music Access, Inc. ("Music Access") and Steve Cavazos (collectively, "Defendants"). Plaintiff Derek "Colddrank" Marshall ("Plaintiff") opposes the motion. (Doc. 33.) Defendants filed a reply. (Doc. 36.) For the reasons below, the Court will grant the *Motion* in part. This case will be transferred to the United States District Court for the Northern District of Texas.

## I.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Plaintiff is a producer, songwriter, and recording artist who resides in Baton Rouge, Louisiana. (Doc. 1 at 2.)[1] He is also the "joint author, performer, and rightful copyright holder" of several "commercially successful" recordings, including the songs "One Night Stand" and "Good Foot." (*Id.* at 1.) Defendant Music Access "is a Texas-based music company." (*Id.* at 2.) Defendant Robert Gonzalez is, according to Plaintiff, a "representative of Music Access." (*Id.* at 3.) And Defendant Steve Cavazos is the Vice President of Music Access. (*Id.*)[2]

---

[1] For the most part, the above factual allegations come from the *Complaint* (Doc. 1). At this stage, "[t]he allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[2] Defendants Does 1–10 ("the Doe Defendants") "are presently unknown parties" who facilitated and/or benefited from the "exploitation of Plaintiff's works." (Doc. 1 at 3, 9.) The Doe Defendants have not been served. (*Id.* at 9.) Defendants' *Motion* presumes that the Doe Defendants live in Texas. (Doc. 25-1 at 11.) Otherwise, the parties do not discuss these defendants in their respective filings.

Plaintiff alleges that, despite his "protectable creative contributions" to the aforementioned recordings (e.g., melodies, lyrics, vocal hooks, background vocals), "Defendants released, monetized, and publicly exploited these works without crediting Plaintiff or paying any royalties or compensation" to him. (*Id.* at 1, 3.) Specifically, Defendants released and monetized Plaintiff's works via YouTube, VEVO, Spotify, Apple Music, and other platforms/services. (*Id.* at 3.) This conduct has caused Plaintiff "substantial harm," including loss of royalties/profits, loss of credit, and reputational damage. (*Id.* at 4.) Plaintiff therefore brings, *inter alia*, claims of copyright infringement under 17 U.S.C. § 501, false designation of origin and false endorsement under 15 U.S.C. § 1125(a), unjust enrichment, and breach of an implied-in-fact contract arising when Plaintiff authored or contributed to the relevant works. (*Id.* at 4–8.)

Finally, Plaintiff alleges that, on or about January 30, 2025, Defendant Cavazos sent Plaintiff a proposed asset purchase agreement ("the Proposed Agreement"), by which Defendants sought to acquire Plaintiff's rights to "One Night Stand" and "Good Foot." (*Id.* at 3.) Plaintiff "never executed th[is] agreement," but Defendants "continued their exploitation" of Plaintiff's works. (*Id.* at 1, 3–4.) Plaintiff suggests that the Proposed Agreement is a *de facto* acknowledgment of "Plaintiff's authorship and ownership" of the relevant works. (*Id.* at 1.) Neither party has provided the Proposed Agreement to this Court.

Defendants have, however, provided the Affidavit of Robert Gonzalez, who identifies himself as the President and CEO of Music Access. (Doc. 25-2 at 1–2.)[3] Gonzalez swears that: (1) "All of [Defendants'] activities" take place in Dallas, Texas. (*Id.* at 1.) (2) "All of the named Defendants are domiciled in Dallas County . . . ." (*Id.*) (3) Music Access "is a Texas corporation

---

[3] The Court may properly consider Gonzalez's sworn statements when determining whether it has personal jurisdiction over Defendants. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *accord Thompson*, 755 F.2d at 1165 (citing *Washington v. Norton Mfg. Co.*, 588 F.2d 441, 443 (5th Cir.), *cert. denied*, 442 U.S. 942 (1979)).

and [is] registered to do business in . . . Texas." (*Id.* at 2.) (4) Music Access "has no direct and intentional affiliation with Louisiana"; it is not located in Louisiana, has no officers or employees in Louisiana, conducts no business in Louisiana, does not advertise in Louisiana, and directs no activities toward Louisiana. (*Id.* at 1.) And (5) requiring Defendants to travel to this District (e.g., to testify as witnesses) "would pose an undue burden," financially and otherwise. (*Id.*)

Plaintiff filed suit in this Court on September 9, 2025. (Doc. 1.) On February 13, 2026, Defendants filed the instant motion. (Doc. 25.) Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(2) (i.e., for lack of personal jurisdiction), under Rule 12(b)(3) (i.e., for improper venue), or under Rule 12(b)(7) (i.e., for failure to join a necessary party).[4] (*Id.* at 1; Doc. 25-1 at 12–14.) In the alternative, Defendants seek transfer of this case to the United States District Court for the Northern District of Texas. (Doc. 25 at 2 (citing 28 U.S.C. §§ 1404(a), 1406(a)).) Plaintiff does not dispute that this case can be transferred to the Northern District of Texas. (*See* Doc. 33.) But Plaintiff opposes Defendants' requests for dismissal *and* transfer. (*Id.* at 7.)

## II.     RULE 12(B)(2) STANDARD

When a non-resident defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing that the district court can exercise personal jurisdiction. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013). When the court resolves a Rule 12(b)(2) motion without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Id.* (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999)); *accord Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The court may consider, *inter alia*,

---

[4] The Court can decide Defendants' *Motion* under Rule 12(b)(2) and therefore pretermits analysis of venue and joinder of necessary parties. The Court does, however, note the following: In the *Opposition*, Plaintiff's Counsel cites *Palmer v. Braun*, 376 F.3d 1254, 1260 (11th Cir. 2004), in support of the argument that venue is proper with respect to Plaintiff's copyright infringement claim. (Doc. 33 at 4–5.) To be sure, *Palmer* is a real case. But the quote which Counsel purports to pull from *Palmer* does not appear therein. As far as the Court can tell, the quote does not appear in *any* case. Because this case will be transferred, the Court will not pursue this issue. But the Court cautions counsel to review all briefs carefully before filing.

affidavits submitted by the parties. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Uncontroverted allegations made in the complaint must be taken as true. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

In a diversity action, a federal district court may exercise personal jurisdiction over a non-resident defendant if the forum state's long-arm statute so permits and if the exercise of such jurisdiction complies with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Priv., Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston*, 523 F.3d at 609). Louisiana's long-arm statute, La. R.S. § 13:3201, extends the exercise of personal jurisdiction to the limits of due process. *Anderson v. GlobalSantaFe Offshore Servs., Inc.*, 924 F. Supp. 2d 738, 742 (E.D. La. 2013) (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B))); *accord A & L Energy, Inc. v. Pegasus Grp.*, 2000-3255 (La. 6/29/01), 791 So. 2d 1266, 1270. As a result, the usual two-step inquiry "collapses into one federal due process analysis." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (quoting *Sangha*, 882 F.3d at 101).

A court's exercise of jurisdiction over a non-resident defendant satisfies due process "where the defendant [has] 'purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.'" *Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam) (cleaned up)). "Sufficient contacts will give rise to either general or specific jurisdiction." *Id.* (citing *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024)). General jurisdiction applies where a defendant's "affiliations with the [forum state] are so continuous and systematic as to render [it]

4

essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up).

"The court may assert specific personal jurisdiction over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016); *see also Sangha*, 882 F.3d at 101 ("[S]uch jurisdiction exists 'when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008))); *Goodyear*, 564 U.S. at 919 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (quotation omitted)).

The Fifth Circuit has articulated a three-step test for specific jurisdiction: (1) Does the defendant have minimum contacts with the forum state? In other words, has the defendant purposefully directed its activities toward the forum state or availed itself of the privileges of conducting activities there? (2) Does the cause of action arise out of or result from the defendant's forum-related contacts? (3) Is the exercise of personal jurisdiction fair and reasonable? *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318–19 (5th Cir. 2020) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)); *see also McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (reciting the five factors comprising the "fair and reasonable" inquiry).

### III.    PARTIES' ARGUMENTS

#### A.    Defendants' *Motion* (Doc. 25)

Defendants first argue that Plaintiff cannot establish general or specific personal jurisdiction. (Doc. 25-1 at 7.) Plaintiff does not allege general jurisdiction. (*Id.*) But regardless, Defendant Music Access is incorporated in Texas and has its principal place of business there. (*Id.* (referencing Doc. 25-2 at 1); *see also* Doc. 25-2 at 1 (noting that the named Defendants are domiciled in Dallas County).) Thus, Defendants say, the Court "does not have general personal jurisdiction over Defendants." (Doc. 25-1 at 8.)

As far as specific jurisdiction, Defendants point out that the *Complaint* alleges only that Defendant Cavazos presented Plaintiff with the Proposed Agreement, which Plaintiff refused to sign. (*Id.*) Defendants contend that a *proposed* contract cannot establish specific jurisdiction. (*Id.* at 8–9 (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).) Likewise, "[a]n exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required purposeful availment of the benefits and protections of [the forum state]." (*Id.* at 9 (quoting *Moncrief Oil*, 481 F.3d at 312).) With respect to the allegations that Defendants exploited Plaintiff's works, Defendants note that all of their conduct must have occurred in Texas, not Louisiana. (*Id.* at 9–10 (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014)); *see also* Doc. 25-2 at 1 ("All of the business conducted by Music Access, Inc. is conducted . . . in Dallas, Texas.").)

Defendants add that, even if they had the requisite minimum contacts with Louisiana, the exercise of personal jurisdiction would, in this instance, run counter to "traditional notions of fair play and substantial justice." (*Id.* at 10 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).) The burden on Defendants would be heavy because they are based in and operate in

6

Texas; relatedly, key witnesses and "the majority, if not all, of the evidence relevant to this litigation w[ill] be located in Dallas." (*Id.* at 11.) And while Louisiana may have an interest "in providing its resident a convenient forum [in which] to litigate claims," such interest "must be weighed against" Defendants' lack of ties to Louisiana and the aforementioned burdens. (*Id.*) Defendants urge that, if the Court deems dismissal inappropriate, then it should transfer this case to the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a). (*Id.* at 12.)

B.    **Plaintiff's *Opposition* (Doc. 33)**

Plaintiff acknowledges that Defendants' "principal place of business is . . . Texas" but disputes Defendants' characterization of "the nature of their contacts with Louisiana." (Doc. 33 at 1.) According to Plaintiff, the transmission of the Proposed Agreement "constitutes the 'transacting of business' within the meaning of the Louisiana Long-Arm Statute and establishes the minimum contacts necessary to support specific personal jurisdiction." (*Id.*)

In support of this contention, Plaintiff cites *McFadin v. Gerber*, where some defendants "directed the sale of merchandise" toward the forum state. (*Id.* at 3 (citing *McFadin*, 587 F.3d 753).) Plaintiff posits that the instant case is similar to *McFadin* in that, here, Defendants "**initiate[d]** the contact" by sending Plaintiff—"a Louisiana resident"—a contract. (*Id.* (emphasis in original).) In other words, Defendants "deliberately reached into this forum to conduct business." (*Id.*) Plaintiff asserts that the Proposed Agreement is "central" to his claims in that it admits his authorship and ownership of the relevant works. (*Id.* at 3–4.)

Finally, Plaintiff claims that, "[g]iven modern travel and electronic discovery," the inconvenience of litigating in this District is "minimal." (*Id.* at 4.) He adds that "Louisiana has a manifest interest in providing a forum for its residents to resolve disputes concerning their intellectual property." (*Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).)

7

**C.      Defendants' *Reply* (Doc. 36)**

Defendants reiterate that the Proposed Agreement does not establish a *prima facie* case of personal jurisdiction. (Doc. 36 at 2 (citing *Johnston*, 523 F.3d at 609).) Otherwise, Defendants argue—for the first time—that the *Complaint* fails to state a valid claim for relief. (*Id.* at 2–4.)[5]

**IV.    DISCUSSION**

**A.      Lack of Personal Jurisdiction**

***1.      Applicable Law***

The Supreme Court has explained that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "Accordingly, [the Supreme Court] ha[s] upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State . . . ." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985)). "But the plaintiff cannot be the only link between the defendant and the forum." *Id.*

Consistent with the above, the Fifth Circuit has held that "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil*, 481 F.3d at 311 (citing *Latshaw*, 167 F.3d at 211; *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983)). Nor does "[a]n exchange of communications in the course of developing and carrying out a contract" independently "constitute the required purposeful availment of the benefits and protections of [state] law." *Id.* at 312 (citing *Holt Oil &*

---

[5] Notably, Defendants have not moved for dismissal under Rule 12(b)(6). (*See* Doc. 25.) In any event, Defendants' arguments under this rule are ancillary. The Court need not—and will not—reach them.

*Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)); *see, e.g.*, *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004) ("[T]he fact that WWAI contracted with Texas-based OTSI, initiated and contemplated a long-term business relationship with OTSI, communicated with OTSI concerning the development and execution of the contract, and wired money to OTSI in Texas do not indicate that WWAI intended to avail itself of the privilege of doing business in Texas.").

### 2.    Analysis

Plaintiff does not attach any affidavits or documentary evidence to his *Opposition*. And he does not otherwise contest Defendant Gonzalez's sworn statements. Thus, for purposes of deciding Defendants' *Motion*, the Court accepts that (1) "[a]ll of the named Defendants are domiciled in Dallas County, Texas," and (2) Defendant Music Access is not located in Louisiana, has no officers or employees in Louisiana, conducts no business in Louisiana, does not advertise in Louisiana, and directs no activities toward Louisiana. (Doc. 25-2 at 1.) Relatedly, the Court accepts that (3) Music Access conducts all of its business through its offices in Dallas. (*Id.*) Given these facts, the Court has little difficulty concluding that it lacks general personal jurisdiction over Defendants. Indeed, Plaintiff does not argue that the Court has such jurisdiction.[6]

The question, then, is whether the Court has specific personal jurisdiction over Defendants. It does not. Worth repeating, Plaintiff bears the burden of making a *prima facie* case of specific jurisdiction. *See Herman*, 730 F.3d at 464; *see also Seiferth*, 472 F.3d at 270. That is, Plaintiff must show that Defendants have the requisite minimum contacts with Louisiana. *See Libersat*, 978

---

[6] *See also Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) ("[W]hen a party does not address an issue in his brief to the district court, that failure constitutes waiver on appeal. . . . By analogy, failure to brief an argument in the district court waives that argument in that court." (quoting *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.))), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) ("To avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases." (quotation omitted)).

F.3d at 318–19. And Plaintiff must show that his claims arise out of or result from those contacts. *See id.* Working backward, the Court finds that neither prong has been satisfied.

Because specific personal jurisdiction is claim-specific, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth*, 472 F.3d at 274. Here, however, Plaintiff insists that all of his claims arise out of one forum contact: Defendants' transmission of the Proposed Agreement to Plaintiff. (*See* Doc. 33 at 2–4.) There are manifold issues with this position. Most fundamentally, specific jurisdiction applies "only *if* the cause[s] of action asserted arise[] out of or [are] related to" Defendant's contacts with Louisiana. *See, e.g.*, *Int'l Energy Ventures*, 818 F.3d at 212 (emphasis in original). None of Plaintiff's claims arise out of the Purchase Agreement. And while the *Complaint* alleges that the agreement "expressly acknowledges" Plaintiff's interests in the songs "One Night Stand" and "Good Foot," (Doc. 1 at 3), it is at best a stretch to say that Plaintiff's claims relate to the agreement in a way that establishes specific jurisdiction, *see, e.g.*, *Shambaugh*, 91 F.4th at 372 (using "results from" instead of "relates to"); *Advanta-Star Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, No. 21-1174, 2021 WL 4989797, at *7 (E.D. La. Oct. 27, 2021) (rejecting the argument that a copyright claim arose out of or related to licensing agreements which had been terminated years prior and which concerned different copyrighted materials). Instead, Plaintiff's claims arise out of and relate to/result from Defendants' alleged exploitation of Plaintiff's intellectual property. Because Defendants conduct all of their business in Texas, such misconduct would necessarily have occurred in Texas. (*See* Doc. 25-1 at 9–10; Doc. 25-2 at 1.)

The second issue is that Plaintiff "never executed" the Proposed Agreement. (Doc. 1 at 3; *see also id.* at 1, 4.) So, Plaintiff's asserted basis for specific personal jurisdiction is a contract that was never formed. The Fifth Circuit has made clear that, on its own, a contract falls short of

10

establishing specific jurisdiction. *See, e.g.*, *Moncrief Oil*, 481 F.3d at 311 ("[M]erely contracting with a resident of the forum state does not establish minimum contacts."); *Hydrokinetics*, 700 F.2d at 1029 ("Although [Alaska Mechanical] did agree to purchase goods which it knew were to be manufactured by Hydrokinetics in Texas, no performance by Alaska Mechanical was to take place in Texas, other than perhaps the payment for the goods."). The Court agrees with Defendants that the Proposed Agreement falls even shorter. Transmission of the agreement was an (unavailing) "exchange of communications." *See Moncrief Oil*, 481 F.3d at 312 (citation omitted).

Plaintiff emphasizes that, here, Defendants "**initiate[d]** the contact." (Doc. 33 at 3 (emphasis in original).)[7] While a defendant's initiation of contact may militate in favor of finding that the defendant purposefully availed itself of the benefits and protections of the forum state, this factor is not dispositive here. *See Burger King*, 471 U.S. at 478–79; *see also Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) ("[A]ny solicitation by Timberline is . . . irrelevant because it establishes, at most, a relationship between Timberline and Sayers—not Timberline and Texas."); *My Fabric Designs, Inc. v. F+W Media, Inc.*, No. 17-2112, 2018 WL 1138436, at *6–7 (N.D. Tex. Mar. 2, 2018) (explaining that courts must "examine the totality of the circumstances to determine whether a defendant purposefully availed itself of the forum state"); *Glob. Weather Prods., LLC v. Joe Pags Media, LLC*, No. 23-1350, 2024 WL 4860816, at *4 (W.D. Tex. Nov. 20, 2024) ("Global Weather Productions must show that the Contract established [that] M3 Media would engage in conduct in Texas in furtherance of its obligations such that it should reasonably anticipate being haled into court in Texas."); *Apollo Holding Co.,*

---

[7] Plaintiff also argues that *McFadin* confirms his position. (*See* Doc. 33 at 3.) But *McFadin* reiterated that "merely contracting with a resident of the forum state does not establish minimum contacts." *McFadin*, 587 F.3d at 760 (quoting *Moncrief Oil*, 481 F.3d at 311). And ultimately, the Fifth Circuit determined that the district court *lacked* personal jurisdiction over the contract claim. *Id.* at 761. That the district court had personal jurisdiction over some tort claims brought against other defendants who directed the sale of goods to Texas is unrelated. *See id.* at 763–64.

11

*LLC v. Roe*, No. 24-2773, 2025 WL 1474738, at *10 (E.D. La. May 22, 2025) ("That Roe reached into Louisiana to initiate the negotiations . . . resulted from nothing but the mere fortuity that Plaintiffs happen to be residents of the forum." (cleaned up)). Plus, Defendants are correct that the *Complaint* does not actually allege that Defendants *initiated* contact. (*See* Doc. 1 at 3.)

Simply, Plaintiff does not "plead facts sufficient to make a *prima facie* case of specific personal jurisdiction" over Defendants. *See Talisman Specialty Underwriters, Inc. v. N. Am. Cas. Co.*, No. 24-893, 2025 WL 958220, at *3–4 (E.D. La. Mar. 31, 2025). Because Plaintiff has not met his burden, *see Seiferth*, 472 F.3d at 271, the Court "need not examine whether exercising specific jurisdiction over [Defendants] comports with 'fair play and substantial justice,'" *see Panda Brandywine*, 253 F.3d at 870.

### B.    Transfer

#### 1.    *Applicable Law*

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer "is only authorized if the movant establishes that: '(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of witnesses, and the interests of justice.'" *MAPP, LLC v. Floor & Décor Outlets of Am., Inc.*, No. 23-45, 2024 WL 944227, at *7 (M.D. La. Feb. 21, 2024) (deGravelles, J.) (quoting *O'Quin v. Fin. Servs. Online, Inc.*, No. 18-36, 2018 WL 5316360, at *10 (M.D. La. Oct. 26, 2018) (deGravelles, J.)); *see also Aguacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978); 14D *Wright & Miller's Federal Practice & Procedure* §§ 3827, 3842 (4th ed. 2026).

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The Fifth Circuit has held that, "[w]here a court finds [that] it lacks personal jurisdiction, it . . . is authorized under 28 U.S.C. § 1406(a) to transfer the action to 'any district or division in which it could have been brought'" if doing so "is 'in the interest of justice.'" *Herman*, 730 F.3d at 466 (quoting 28 U.S.C. § 1406(a)) (citing *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967)).

Finally, 28 U.S.C. § 1631 provides that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."

### 2.    *Analysis*

The Court notes that, while Plaintiff opposes both dismissal and transfer, (Doc. 33 at 7), he nowhere disputes that this action could have been brought in the United States District Court for the Northern District of Texas, (*see* Doc. 33; *see also* Doc. 25-2 at 1 ("All of the named Defendants are domiciled in Dallas County, Texas . . . ."); Doc. 25-1 at 18–20 (acknowledging that venue is likewise proper in the Northern District of Texas)). And for their part, Defendants argue that, if the Court deems dismissal under Rule 12(b)(2) inappropriate, then the Court should transfer this case to the Northern District of Texas. (Doc. 25-1 at 12.)

In support of this contention, Defendants reference only 28 U.S.C. § 1404(a). (*Id.*) But this Court can—and does—look beyond § 1404(a), *viz.*, to 28 U.S.C. § 1631. *See Louis v. Leidos, Inc.*, No. 24-350, 2025 WL 350238, at *4 (M.D. La. Jan. 30, 2025) (deGravelles, J.); *see also Franco v. Mabe Trucking Co.*, 3 F.4th 788, 796 (5th Cir. 2021) (Dennis, J.) ("In light of § 1631's

13

mandatory language, our sister circuits have applied the statute to transfers *even when the parties did not move under § 1631 . . . .*" (emphasis added)).

In *Franco v. Mabe Trucking Co.*, the Fifth Circuit performed extensive analysis of 28 U.S.C. § 1631, which section "appears to be intended to avoid the confusion that was created by §§ 1404(a) and 1406(a)'s focus on whether venue was proper" in the transferor district. *Franco*, 3 F.4th at 794; *see also Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987). Section 1631 plainly provides "that a district court shall transfer the case if there is a lack of jurisdiction and justice so demands[,] regardless of the propriety of the original venue." *Franco*, 3 F.4th at 794. The Fifth Circuit has held that, as used in the section, "the term 'jurisdiction' . . . encompasses both subject-matter and personal jurisdiction." *Id.* at 795.

Here, the Court has determined that it lacks personal jurisdiction over Defendants, and so it need not reach the issue of whether venue is proper. *See* 28 U.S.C. § 1631; *see also Franco*, 3 F.4th at 796 (citing *Ross*, 822 F.2d at 1527 ("stating that, where district court lacked personal jurisdiction over the defendant, '[t]he correct course . . . was to transfer the action pursuant to [§ 1631]'")). Instead, the "sole issue" is whether it is in the interest of justice to transfer this case, as opposed to dismissing it under Rule 12(b)(2). *See Withers v. City of Aberdeen*, No. 23-1510, 2024 WL 5159887, at *3 (M.D. La. Dec. 18, 2024) (Jackson, J.); *see also Harutyunyan v. Love*, No. 19-41, 2019 WL 5551901, at *4 (E.D. La. Oct. 28, 2019) ("A case is 'transferable' pursuant to § 1631 when three conditions are met: (1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interests of justice." (cleaned up)).

Again, no party disputes that this action could have been brought in the Northern District of Texas. And the Court now finds that transfer to the Northern District of Texas is in the interest

14

of justice—because it better promotes judicial economy than would dismissal, and because it better conserves the parties' resources. *See, e.g.*, *Wilson v. Farley Ctr. at Williamsburg*, No. 22-114, 2024 WL 659487, at \*5 (M.D. La. Feb. 16, 2024) (Jackson, J.); *Louis*, 2025 WL 350238, at \*5; *see also* 14D *Wright & Miller's Federal Practice & Procedure* § 3827 (4th ed. 2026).

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' *Motion to Dismiss Pursuant to 12(b)(2) and 12(b)(3), or Alternative, Motion to Transfer to the Northern District of Texas due to Improper Venue* (Doc. 25) is **GRANTED IN PART**. This case is hereby **TRANSFERRED** to the United States District Court for the Northern District of Texas. In all other respects, the motion is **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on <u>June 26, 2026</u>.

 

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**